NATIONAL WALL PAPER COMPANY, APPELLEE, V. COLUMBIA
    NATIONAL BANK, APPELLANT, IMPLEADED WITH CLA-
    SON & FLETCHER COMPANY ET AL., APPELLEES.

FILED MARCH 4, 1903.    No. 12,930.

1. **Insolvent Corporation:** TRANSFER OF ASSETS IN SETTLEMENT WITH
    CREDITOR: CLAIM ON WHICH OFFICERS OF CORPORATION ARE PER-
    SONALLY LIABLE: TRUST: DISTRIBUTION OF ASSETS. When an in-
    solvent corporation transfers all of its assets to a creditor in
    settlement of a claim upon which the officers of the corporation
    are personally liable, and the transfer is for that reason held
    invalid, the transferee holds the property in trust for all cred-
    itors of the corporation, and is entitled to participate in the
    distribution of the assets.

2. **Action in Equity:** DISTRIBUTION OF ASSETS. In an action in equity
    against such trustee the court will distribute the assets to all
    creditors, parties to the suit, in proportion to their respective
    claims. *Merchants' Nat. Bank of Omaha v. McDonald*, 63 Neb.
    363, distinguished.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, DISTRICT JUDGE. *Reversed.*

*Halleck F. Rose, E. E. Brown* and *Wilmer B. Comstock,*
for appellant.

*Arthur W. Lane, Henry H. Wilson, Arnot C. Ricketts,
Orpheus B. Polk* and *Frederick Shepherd, contra.*

SEDGWICK, J.

A statement of the facts in this case may be found in
the opinion of the court upon the former appeal, 63 Neb.
234, 56 L. R. A. 121. The reason for reversing the former
judgment of the district court is stated in the syllabus:
"An insolvent corporation can not make a preference of
a debt due from it on which the officers and directors are
bound as sureties." The opinion closes with the following
language: "There is a controversy between the plaintiff
and the interveners as to their respective rights in the

premises. The district court not having passed upon that question, the cause is reversed and remanded to that court, with direction to enter a decree against the bank, and determine the rights of plaintiff and interveners."

The district court construed this language to mean that the defendant, the Columbia National Bank, should not be allowed any part of the proceeds of the goods then in the hands of the bank, and made findings and entered judgment to that effect, and entered several judgments against the bank in favor of the plaintiff and the intervening creditors, respectively, in the amount of their respective claims, with interest to the time of entering judgment. From this action of the court the defendant, the Columbia National Bank, has appealed to this court. After the cause was remanded there was no change made in the pleadings and no evidence taken, the findings and judgment of the district court being predicated entirely upon the prior findings and judgment of that court and the opinion and mandate of this court.

1. The plaintiff and interveners contend that an insolvent corporation can secure its creditors the same as an individual can, and that from this it follows that, if the corporation can voluntarily create a lien in favor of a creditor, the creditor can acquire a lien by appropriate adversary proceedings, and that, when this action was begun, and when the respective interveners filed their respective cross-petitions, the property of the debtor corporation was subject to levy for the satisfaction of the claims of the plaintiff and interveners, and under the decision of this court in *Merchants' Nat. Bank v. McDonald*, 63 Neb. 363, the plaintiff and interveners by these proceedings acquired liens in the order of the filing of their petitions and cross-petitions. The question whether the assets of an insolvent corporation are a trust fund for all its creditors, and the relation of that question to this controversy, are also much discussed.

It is insisted that in this case the property of the corporation was in the hands of a fraudulent grantee, and

that therefore the creditors might levy on the same, treating the fraudulent grant as void as against these creditors. This question depends for its solution upon the character that is to be given to the transaction between the debtor corporation and the defendant bank. It is conceded that the bank acted in good faith in taking the stock of goods for its claim against the corporation; that the goods were sold by the bank for their fair market value, and the proceeds thereof were not more than the actual claim of the bank against the corporation. When the transaction was questioned, there was no disguise or attempt at disguise of the facts in relation thereto. The goods had been delivered to the bank. The bank had disposed of them with prudence and fairness, realizing the full value thereof. The plaintiff and interveners contested the right of the bank to the attempted preference, and the court sustained that contention on the ground that public policy would not allow the insolvent corporation to pay the bank its claim in full, to the prejudice of other creditors because the claim of the bank was also secured by the personal indorsement of the officers of the corporation.

In *Holbrook v. Peters & Miller Co.,* 8 Wash. 344, 36 Pac. 256, 257, the syllabus is as follows: "(1) An assignment by an insolvent corporation of all its property to one of its creditors for the purpose of satisfying its debt to such creditor is not a conveyance 'with intent to delay and defraud creditors,' within the meaning of the attachment law, since preferring one creditor does not necessarily constitute fraud in fact. (2) In such case the remedy of the other creditors is by suit in equity to compel an equal distribution of the corporate assets." And the court said: "It is not a fraud in fact for a debtor, whether a natural person or a corporation, to prefer a creditor, and it is only because the law regards the assets of an insolvent corporation as a trust fund for all its creditors that it interferes with preferences made by debtors of that class. If the Peters & Miller Company was an insolvent corporation at the time it transferred its prop-

8

erty to the bank, its other creditors can have adequate relief upon alleging sufficient grounds therefor, by complaint in equity, to subject its assets in the hands of the bank to an equal distribution, in which all its creditors can participate. The ground upon which they must base an action for that purpose will be equitable, and not purely legal. To sustain this attachment would be to permit the respondent to make itself a preferred creditor, which is the very gist of its complaint against the appellant in its treatment of another creditor."

In *Foster v. Mullanphy Planing Mill Co.*, 92 Mo. 79, 4 S. W. 260, 263, an insolvent corporation transferred its assets to a creditor whose claim was also secured by the indorsement of the directors of the debtor corporation. Thereupon other creditors attempted to attach the property on the ground that it had been fraudulently conveyed. In the syllabus the law is declared to be: "The fact that an insolvent corporation makes a deed preferring some creditors, including some of its directors, does not give an unpreferred creditor the right to take out an attachment at law charging the corporation with attempting to defraud its general creditors." And the court said: "Much has been said, and very ingeniously said, by counsel for plaintiff that the directors of the company, it being insolvent, were trustees, and that the assets of the corporation were a trust fund, etc. These premises will readily be admitted. But grant them. Grant, further, for argument's sake, that a breach of trust has been committed by these directors in manner as aforesaid. How is such official dereliction to be reached? Is it a constructive fraud, within the meaning of the attachment act? Certainly no case has gone to that length. The corporate assets being a trust fund, the forum for its enforcement is a court of equity."

These two decisions seem to go upon the ground that the assets of the corporation constituted a trust fund for the benefit of all of its creditors, and to hold that such fund can only be reached by proceedings in equity. It is

urged that in this state a creditor may attach the prop-
erty of an insolvent corporation. It is insisted that this
result necessarily follows from allowing an insolvent cor-
poration to prefer one creditor to the exclusion of another;
but however that may be while the property is in the
hands of the corporation, when, as in this case, the debtor
corporation has assigned its property to a creditor inter-
ested therein, and without fraud, the reasoning of the
cases cited seems to apply.

In *Beach v. Miller,* 130 Ill. 162, 22 N. E. 464, 467, it
is said in the syllabus: "A sale and delivery by an in-
solvent corporation of its property to one of its directors
in satisfaction of a pre-existing debt, though voidable in
equity, does not render the property subject to levy at the
suit of the corporation's creditors." And in the opinion
the court said: "After a careful examination of the au-
thorities, we are inclined to the opinion that, if this cor-
poration was insolvent at the time of the sale, Miller, who
was a director, could not lawfully purchase the property
in satisfaction of his own debt, to the exclusion of other
creditors, but he took the property charged with the trust
in favor of other creditors, which may be enforced in an
appropriate action. Miller, being a creditor, would doubt-
less be entitled to share with the other creditors in the
property, but he could not appropriate the entire amount
to the payment of his own debt. This, however, conferred
no right upon appellants to seize the property and sell it
in satisfaction of the debt of Blatchford & Co., as creditors
of the corporation. They occupied no better position than
Miller. It may be, and no doubt is, true, that if Blatch-
ford & Co. had levied on the property while in the hands
of the corporation, before the sale to Miller, they would,
under such circumstances, have been entitled to hold it;
but after the sale and delivery to Miller they had no such
right. The property had passed beyond the reach of their
execution. It had passed into Miller's hands, charged
with a trust which a court of equity might enforce in favor
of all the creditors of the corporation, or such as might
invoke the aid of that court."

The principle thus announced by the Illinois court seems to be applicable in this case. Whether the creditors could have attached the goods in the hands of the corporation is not a decisive question here. The goods had been transferred to one creditor. It was expressly found by the trial court that "the preference of such bank to the exclusion of all other creditors was not in any way tainted with fraud." That is, there was no actual fraud upon the part of the bank nor of the debtor corporation. The question of fraud is, by statute, in this state made a question of fact. The right of the bank to the intended preference is not denied on account of fraud, but because it is supposed to be against public policy to permit an insolvent corporation to prefer its creditor when the officers of the corporation are personally liable on the claim which it is sought to prefer. The bank, then, had as good right to the property of the corporation as had any creditor, and when all of the goods of the corporation were transferred to it, and it was not allowed to prefer its claim, it became trustee for all the creditors. When this trustee was called upon in a court of equity to account for this property, the other creditors might come in and share in proportion to their claims, but they could not themselves obtain a preference by attachment or other proceedings.

In *Merchants' Nat. Bank v. McDonald, supra,* an insolvent corporation made a bill of sale of all its stock in trade to the bank to secure the payment of notes which were signed by the corporation and also by one McKell, the president and director of the corporation. It does not appear in the opinion that the property was delivered to the bank; on the other hand, it is expressly stated that the indebtedness was in reality the indebtedness of McKell, and that the corporation was not liable therefor. The bank not being a creditor, the bill of sale was fraudulent and the property subject to attachment. If there are expressions in the opinion inconsistent with the principle here announced, such expressions were not warranted by the facts in the case as disclosed by the record.

It is contended that "there was nothing before the trial court upon which a decree recognizing the claim of the bank could have been based," but the facts alleged in the pleadings are sufficient to show that the bank was entitled to participate in the distribution of the proceeds of the property in its hands, which, as heretofore shown, it held as trustee for all the creditors. A court of equity, having taken control of the funds under such circumstances, will enforce the trust and distribute the funds to the parties entitled thereto.

It is also urged that "the bank is estopped from presenting its case here on a different theory from that urged upon the first appeal." But the bank ought not to be refused the portion of the assets to which it is justly entitled, for the sole reason that it demanded more than was found to be due it. Its present claim is included in the former one; it is not inconsistent with it.

2. It is urged that the language above quoted from the opinion in this case upon the former appeal is a determination that the bank could not participate in the distribution of the assets. But the only issue that had at that time been considered either by the trial court or by this court was the right of the bank to take the property as a preferred creditor in settlement of its claim. This was the issue that the court had in mind when the direction was made to enter decree against the bank. The question of the right of the bank to participate in the distribution of the assets was not mentioned in the pleadings nor findings of the trial court, nor in the briefs of counsel upon the former hearing in this court. It was of no importance until the issue presented had been determined against the bank. The effect of that determination was that the assets did not belong exclusively to the bank, but constituted a trust fund in the hands of the bank for all of the creditors of the debtor corporation. It may, however, be observed that if the questions presented upon this appeal had been discussed and urged upon the court upon the former appeal, the language of the opinion referred to

might have been made to more accurately express the views of the court upon these questions.

We think that the defendant bank is entitled to participate in the distribution of the assets in its hands. The findings and. judgments complained of are therefore reversed, and the cause remanded with instructions to find the respective claims of the parties in accordance with this opinion, and to decree a distribution of the funds accordingly.

REVERSED AND REMANDED.