HOGGAN v. PRICE RIVER IRRIGATION CO. et al.

No. 3303.   Decided October 10, 1919.   (184 Pac. 536.)

1. APPEAL AND ERROR—FILING OF AMENDED COMPLAINT SETTING UP NEW CAUSE OF ACTION HARMLESS. The denial of defendant's motion to strike from the file an amended and supplemental complaint, because additional causes of action were set forth, referring to an allegation asking attorney's fees which was not in the original complaint, was not prejudicial error, where no attorney's fees were allowed and no further attention paid by either counsel or court to the question of attorney's fees. (Page 175.)

2. PLEADING—CREDITORS' BILL NOT MULTIFARIOUS. A complaint, in effect a creditor's bill after exhaustion of legal remedies, seeking to force a creditor's lien on debtor's property and to fol-

low assets of the debtor corporation into the hands of all who are not bona fide purchasers, the facts stated relating wholly to the same general cause of action, is not multifarious, and not subject to demurrer for improperly uniting or mingling causes of action, which should be separately stated. (Page 176.)

3. CORPORATIONS—NEW CORPORATION ORGANIZED BY SELLER'S STOCK-HOLDERS LIABLE FOR SELLER'S DEBTS. The management of one corporation may organize another and transfer its property to the new corporation, but if it does so, even with the consent of all its stockholders, the new corporation is liable for the debts of the other to the extent of the value of the property received; and, assuming that such conveyance was not void unless fraudulent, nor for the purpose of hindering or defrauding creditors, the creditors still have the right to follow the property thus transferred.[1]  (Page 177.)

4. CORPORATIONS—STOCKHOLDERS ON TRANSFER TO NEW CORPORATION HAVING SAME DIRECTORS, NOT LIABLE FOR ULTRA VIRES ACTS. Evidence held not to show transactions by which debtor corporation was stripped of all its property resulted from fraud or bad faith of the directors, or that there was any dissipation of assets in making such conveyances, or any intent that such transactions should be of advantage to the directors of both the selling and buying corporation, except perhaps incidentally as stockholders and defendants in creditors' action, and those stockholders who were not directors of the debtor corporation at the time of such transfer were not accountable for the corporation's illegal or ultra vires acts. (Page 179.)

5. CORPORATIONS—RIGHTS OF CREDITORS ON TRANSFER OF PROPERTY TO NEW CORPORATION—SALES. A trust agreement, under which all the property of the debtor corporation was transferred to a new corporation, construed and held to provide that the proceeds of sale of water shares should be applied first to pay the debts the company incurred in connection with the construction of its irrigation project, excepting only a loan from the state, so that a creditor of the company was entitled to payment out of the proceeds of stock sales. (Page 182.)

6. CORPORATIONS—RIGHTS OF OFFICERS AND STOCKHOLDERS UNDER CREDITORS' BILL. Where individual stockholders, defendants in a creditor's suit, paid out their money for the corporation, a stockholder, who was not a director of the debtor corporation, had a right to accept a preference by payment in corporate stock whether the company was insolvent or not, but a director of an insolvent corporation had no right to do so

---

[1] *Cooper* v. *Light & Power Co.*, 35 Utah, 570, 102 Pac. 202, 136 Am. St. Rep. 1075.

whether he became creditor as guarantor, indorser, or surety. (Page 183.)

7. CORPORATIONS—PAYMENT OF NOTES TO DIRECTOR WHEN CORPORATION WAS INSOLVENT. Where a corporation was willing to make unusually liberal discounts to a stockholder purchasing its notes, the purchaser would not for such reason be charged with fraud or dishonesty, but if such purchaser was a director when presenting the purchase notes for payment, and the company was then insolvent, he would not be justified in accepting and appropriating shares in a new corporation in payment of such debts, thus depriving other creditors of a fund to which they were entitled, and as director he must be presumed to know the corporation's financial condition. (Page 184.)

8. APPEAL AND ERROR—INSUFFICIENCY OF RECORD TO ESTABLISH VALUE AT TRANSFER OF ASSETS TO NEW CORPORATION. In a creditor's bill to subject property of a debtor irrigation company passing into the hands of another corporation to his claims, failure to determine whether the irrigation company was insolvent at a particular time leaves the Supreme Court unable to direct what findings should be made as to the price of the stock or water shares in the new company at the time of the transfer to it from the irrigation company; the price fixed in a trust agreement for transfer being purely fictitious. (Page 184.)

Appeal from District Court of Salt Lake County, Third District, *H. M. Stephens,* Judge.

Action by James W. Hoggan against the Price River Irrigation Company, a corporation, and others.

Judgment for plaintiff, and the named defendant and certain other defendants appeal.

REVERSED as to certain defendants, REVERSED and directed as to certain others, and AFFIRMED as to others

*M. Thomas* and *Soule & Spaulding,* all of Salt Lake City, for appellants.

*Willard Hanson* and *Dey & Hoppaugh,* all of Salt Lake City, for respondent.

WEBER, J.

The substance of plaintiff's amended and supplemental complaint is that in 1906 he sold and conveyed the Mammoth Reservoir system, with buildings and personal property, to the Utah Irrigation & Power Company for $20,000, on which a partial payment of $500 was made; that on July 22, 1907, the Irrigated Lands Company, one of the above defendants, was incorporated under the laws of Utah, and took over the property of the Utah Irrigation & Power Company, and assumed the debts of the latter company, including plaintiff's claim; that in January, 1910, the Irrigated Lands Company made and delivered to plaintiff its promissory notes, secured by shares of stock in the Price River Irrigation Company and the Abraham Irrigation Company; that said notes were not paid when due; that plaintiff obtained judgment, sold· the collateral which he had received with the notes for the sum of $4,890, and that in one case the deficiency judgment amounted to $13,910.90 and in the other the judgment was for $882.82; that executions were issued and were returned wholly unsatisfied.

Plaintiff further alleges that on the 4th day of January, 1910, John Y. Smith, Van D. Spaulding, Thomas Austin, George A. Smith, Thomas Webb, Charles Tyng, William D. Livingston, David Morgan, Albert Smith, and Frank Nelsen constituted the entire board of directors and managing officers of said Irrigated Lands Company, and owned and controlled substantially the entire outstanding capital stock of said corporation; that at the same time the said John Y. Smith, George A. Smith, Thomas Austin, William D. Livingston, Albert Smith, Frank Nelsen, and David Morgan constituted the entire board of directors and managing officers and agents of the Price River Irrigation Company, and were the owners and holders of substantially all of its capital stock; that between the 1st day of August, 1909, and the 12th day of January, 1911, all of the defendants to this suit, contriving and intending to defraud the plaintiff of his claim against the Irrigated Lands Company, and with intent to hinder, delay, and

defraud its creditors, and wrongfully to appropriate to themselves, without any adequate or substantial consideration, all the assets of said last-named company, made and caused to be made by said company various pretended contracts and agreements with the Price River Irrigation Company, and the other defendants, whereby the Irrigated Lands Company conveyed and delivered, without any adequate or substantial consideration whatsoever therefor, all the property, real and personal, and all rights and franchises of the said Irrigated Lands Company to the said Price River Irrigation Company, and to the other defendants; that by reason of the transfers, assignments, and conveyances by the Irrigated Lands Company to the said defendants all of the assets of the Irrigated Lands Company were conveyed, transferred, and assigned to the said defendants, and said Irrigated Lands Company, by reason of the same, was rendered bankrupt and unable to pay any of its debts and obligations, including the debt and obligation owing to plaintiff; that the property so transferred, conveyed, and assigned to said defendants was worth at least the sum of $200,000, and was more than ample to pay the debts and obligations owing plaintiff by the Irrigated Lands Company; that the shares of stock in the Price River Irrigation Company so transferred and assigned to the several defendants had, on or about the 24th day of October, 1908. been placed in trust with William D. Livingston, as trustee, for the purpose of paying the debts and obligations of the Irrigated Lands Company incurred for and in connection with the construction of said project of said Irrigated Lands Company, including the reservoir and main canals of the said Mammoth Reservoir system, other than a loan theretofore made by the state of Utah, and that plaintiff's claims heretofore placed in judgment were incurred in connection with the construction of said project and scheme, and for the reservoir site, maps, and filings, water rights and other property, and tools and implements in connection therewith; that said trust at the time of said transfer had not terminated, and the plaintiff by virtue of said trust was entitled in equity to a lien upon said stock and to be paid therefrom; that the said de-

fendants and each and all of them well knew of said trust, and well knew of the rights of the plaintiff therein; that the transfer of said Price River Irrigation Company stock was a conversion of said stock and a violation of said trust, and the said defendants and each and all participating therein were, and are, liable to account to the plaintiff for the property so sold and converted; that by the said conveyances and assignments the Irrigated Lands Company was deprived of all its properties, franchises, and assets of every kind and description, including property necessarily held and used in the operation, use, and enjoyment of the rights and privileges conferred by its franchises, without which its franchises could not be successfully operated and enjoyed, and thereby became wholly insolvent and unable to pay plaintiff's claim or any part thereof, except so far as the same was secured by said collateral; that plaintiff had no notice, knowledge, information, or belief of the fraud until after rendition of the judgment hereinbefore pleaded; that defendants pretend that they do not now own and are not in possession or control of the property heretofore received by them, and that because they have ceased to own and hold said property they are relieved from all obligation to account herein; but plaintiff alleges that defendants in receiving said property, and in participating in the wrongful acts herein set forth, became and are liable to account for the full value of said property as of the date of the transfer; that by reason of the trust set forth in favor of plaintiff he is entitled to require all of said parties to account for said property and its value as of the date of the transfer thereof, and that the individual directors of the said Irrigated Lands Company, made defendants herein, are personally liable to plaintiff and the other creditors for the value of the property so dissipated and distributed by the said directors in violation of their trust and duties as such officers.

A motion was made by defendants to strike the amended and supplemental complaint from the files because additional causes of action were set forth. The motion was overruled. It is contended that an allegation in which attorneys' fees were claimed was an additional cause of

action, and should have been stricken. As no attorney' fees were allowed and no further attention was paid by either counsel or court to the question of attorneys' fees, the ruling of the court did not constitute prejudicial error. To allow the amendment, or the filing of a supplemental complaint was clearly within the discretion of the court, and the ruling on the motion was not erroneous. 15 C. J. 1445.

A demurrer was interposed on the ground that several causes of action had been improperly united and mingled together, and that the causes of action were not sepa  2 rately stated. The complaint is in effect a creditor's bill after exhaustion of legal remedies. The crux of it is that the creditor seeks to force a creditor's lien on the property of the debtor, and seeks to follow assets of the corporation debtor in the hands of all who are not bona fide purchasers. The facts stated in the complaint relate to the same general cause of action, and the complaint is therefore not multifarious. 15 C. J. 1424; 8 R. C. L. section 531; 2 Thompson, Corp. section 1317; *Haskin Wood V. Co.* v. *Cleveland S. Co.*, 94 Va. 439, 26 S. E. 878; *Wood* v. *Sidney S. & F. Co.*, 92 Hun, 22, 37 N. Y. Supp. 885.

Issues were joined by answers of defendants, and at the close of the trial the case was dismissed as to all defendants except Irrigated Lands Company, Price River Irrigation Company, Thomas Austin, George A. Smith, Albert Smith and John Y. Smith, who, with the exception of the Irrigated Lands Company, are the appellants here. All issues were found in favor of plaintiff. The court's conclusions of law were, in part:

"1. That the attempted transfer to the defendant the Price River Irrigation Company of the property and assets of the Irrigated Lands Company, under date of January 12, 1911, was fraudulent and void, and the taking of said property by the Price River Irrigation Company was a wrongful appropriation and conversion of said property as against the plaintiff herein; and that as against said plaintiff said property is and should be adjudged and decreed to be the property of the Irrigated Lands Company, and subject to plaintiff's judgments.

"2. That the plaintiff is entitled to have applied the property so attempted to be transferred and so converted, and the pro-

ceeds thereof, to the satisfaction of his said judgments, here-inbefore set forth, recovered against the said Irrigated Lands Company; and to have and recover from said property, and the proceeds thereof, the sum of said judgments, together with interest to this date, aggregating the sum of $18,812.80, and also interest hereinafter accruing until paid, together with his costs of suit.

"3. That a special master should be appointed to take over and sell so much of the real and personal property so wrongfully appropriated by the Price River Irrigation Company as may be required to pay plaintiff's claim, together with interest, costs of sale, special master's fees, and the costs of this suit.

"4. That in the event the proceeds of said sale are insufficient to pay the costs and expenses herein, and plaintiff's said claim in full, the plaintiff is entitled to a personal judgment for such deficiency as may remain against the Price River Irrigation Company, John Y. Smith, Thomas Austin, and George A. Smith, to the extent that the property so converted has been sold, mortgaged, or depreciated in value through the acts of the said defendant corporation, and while in its hands, which loss, dissipation, and depreciation of assets exceed the plaintiff's said judgments, and execution against said defendants should issue therefor."

Ninety alleged errors are assigned. The record is voluminous. We have read the testimony as it appears in both the abstract and the transcript. Except to refer to some of the more important of the essential facts, it is neither practicable nor necessary to review the evidence. That all the property of the Irrigated Lands Company was transferred to the Price River Irrigation Company, who refused to pay plaintiff the amount due him, is undisputed. In fact, when the last remnant of the Irrigated Lands Company's assets was transferred to the Price River Irrigation Company, it was expressly stipulated between the two corporations that the Price River Irrigation Company did not assume or agree to pay any of the obligations or indebtedness of the Irrigated Lands Company. It is also conceded that the Price River Irrigation Company never had any property save that received from the Irrigated Lands Company. The management of one corporation may organize another and transfer its property to the new corporation, but if it does so, even with the consent of **3** all its stockholders, the new corporation is liable for the debts of the other to the extent of the value of the property received. *Cooper* v. *Light & Power Co.,* 35 Utah, 570, 102

Pac. 202, 136 Am. St. Rep. 1075. Assuming that the conveyances to the Price River Irrigation Company were not void, nor fraudulent, nor made for the purpose of hindering or defrauding creditors of the Irrigated Lands Company, the plaintiff still had a right to follow the property which had been transferred to the Price River Irrigation Company. The object sought would have been attained as well without setting aside the conveyances. Giving the plaintiff a lien upon the property of the Price River Irrigation Company would have accomplished the same purpose. That, however, is merely a matter of form. We therefore approve conclusions of law 1, 2, and 3.

To understand conclusion No. 4 it is necessary to consider the evidence upon which it is based.

In August, 1908, the Irrigated Lands Company transferred the Mammoth Reservoir and other property to the Price River Irrigation Company, a corporation that had been organized by the management of the Irrigated Lands Company. The capital stock of the Price River Irrigation Company was $500,000, divided into 20,000 shares of the par value of $25 per share. Its capital stock was paid by acceptance of the property conveyed to it by the Irrigated Lands Company. With the exception of one share in the name of each of the incorporators, the stock of the Price River Irrigation Company was placed in the hands of a trustee for the benefit of the Irrigated Lands Company. It is claimed by appellants that the company was organized for the purpose of distributing water among farmers to whom the Price River shares were to be sold. Nothing appears in the record that effectually contradicts this claim. Instead of being a scheme to defraud, as claimed by plaintiff, it seems that it was, under the circumstances at that time, a sensible and businesslike plan, and perhaps as practical as any that could have been devised. When the conveyance of 1908 was made the Irrigated Lands Company agreed to complete the reservoir, and when the balance of the property was conveyed the alleged consideration for the transfer was the release by the Price River Irrigation Company of the other company's promise to complete the res-

ervoir. These transactions stripped the Irrigated Lands Company of all its property, but the evidence, as we read it, does not warrant the conclusion that there was fraud or bad faith by the directors, or that there was any dissipation of assets by them in making these conveyances, or that in conveying the property to the Price River Irrigation Company there was any intent that such conveyance should be of advantage to these directors, or that they did or could make any profit thereby, except, perhaps, incidentally as stockholders. All of the stock of the Price River Irrigation Company, except fourteen shares to the organizers, had been transferred to the Irrigated Lands Company, and was the latter's property, and so far the transaction was merely the exchange of property for stock, and the stock represented the value of the property so conveyed—all of the property of the Price River Irrigation Company. The stock represented so many shares of water rights, and these water rights represented the real value of the Price River project. With the exception of John Y. Smith, the individual appellants were not directors of the Irrigated Lands Company during 1908, and for that reason, if for no other, they should not be held accountable for any illegal or ultra vires acts of the Irrigated Lands Company during that year.

The court's conclusion of law No. 5, and the last, is as follows:

"That each of the defendants John Y. Smith, Thomas Austin, George A. Smith, and Albert Smith is a trustee ex maleficio of the 600 shares of stock of the Price River Irrigation Company received by the several defendants, from Wm. D. Livingston, trustee, and charged with a trust in favor of the plaintiff for payment therefrom of the debt due plaintiff hereinbefore stated. In the event that plaintiff's claim is not recovered in full from the sale of the property of the Irrigated Lands Company wrongfully taken over by the defendant corporation, or by execution against the defendants Price River Irrigation Company, John Y. Smith, Thomas Austin and George A. Smith, then, upon the coming in of the report of the special master showing the deficiency, the defendants should account for the trust stock so received by them, and turn over to the said special master the amount remaining in their hands; and upon said accounting, in so far as said stock has been disposed of by said several defendants, the said defendants

should each severally be charged with the stock disposed of by him at the value of forty dollars per share, and upon such accounting (to the extent only required to pay the balance of plaintiff's said claim), a personal judgment should be entered against the said several defendants respectively, for the stock disposed of."

On September 1, 1908, the Irrigated Lands Company made its fifteen separate promissory notes, each in the sum of $10,-000. The payment of these notes was guaranteed by fifteen men who thereafter became the incorporators of the Price River Irrigation Company and who were stockholders of the Irrigated Lands Company. In July, 1908, a contract was entered into between the Irrigated Lands Company and the Irrigation Investments Company, by which the latter was to sell water rights in the Price River Irrigation Company for a price that would net the Irrigated Lands Company thirty-three dollars per acre. August 1, 1908, an agreement was executed between the proposed guarantors of fifteen promissory notes of $10,000 each, to be issued and disposed of by the Irrigated Lands Company, providing that the personal liability among themselves should be $10,000 each, or one-fifteenth of the total liability. October 24, 1908, the same date on which the Mammoth Reservoir and other property was transferred to the Price River Irrigation Company by the Irrigated Lands Company, a so-called trust agreement was executed by the two corporations. This trust agreement provided inter alia that 14,000 shares of stock should be sold in accordance with a certain contract between the Irrigated Lands Company and the Irrigation Investments Company, and that the trustee should see that the proceeds of sales of the water stock or rights would be applied as follows: First, in payment of the debts and obligations of the Irrigated Lands Company incurred for and in connection with the construction of said project, including reservoir and main canals, other than a loan of $100,000 from the state of Utah; second, in payment of any bonuses allowed and agreed upon by the first party to be paid to those who aided in securing financial aid to the first party; and, third, to turn over any remaining proceeds to the Irrigated Lands Company.

It is contended by plaintiff that by the express terms of

the trust agreement the proceeds of sales of this stock were to
be applied, first, for the benefit of the creditors of the Irri-
gated Lands Company. Appellants insist that by the express
terms of the agreement such proceeds were to be applied only
in payment of the debts of the Irrigated Lands Company
which might be incurred in the completion of the Price River
project. Appellants further insist that if their construction
be not plain and reasonable the district court erred in not
permitting testimony to be introduced to show the intention
of the parties as to who was included in the first class in this
trust agreement. In our opinion, the claims of creditors were
included in the provision where it is stated that proceeds of
sale of water shares shall be applied:

"First, in payment of the debts and obligations of the Irrigated
Lands Company incurred for and in connection with the con-
struction of said project, including reservoir and main canals
(other than a loan of $100,000 from the state of Utah)."

It is found that the plaintiff had sold to the Irrigated Lands
Company, not only the reservoir, but it is found by the court
that the debt to plaintiff was incurred in connection with the
construction of the Mammoth project, including the Mammoth
Reservoir and main canal, the construction work already per-
formed thereon, buildings which were to be used for con-
struction purposes, cement, construction machinery and reser-
voir site, and water rights for water with which said reservoir
was to be filled. The qualifying words, "other than a loan of
$100,000 from the state of Utah," clearly imply that the state
was the only creditor to be excluded from participation in
the proceeds to be derived from the stock placed for sale with
the trustee. The trustee was given power to sell this stock in
accordance with the provision of the sales contract with the
Irrigation Investments Company, and he was given the power
to sell at a price that would net the Irrigated Lands Company
thirty-three dollars per share. The trustee contract was abro-
gated in February, 1909. At that time the board of directors
of the Irrigated Lands Company authorized its manager to
open and establish agencies for the sale of lands and water
rights in the Price project, and to fix the price and terms of
sale as he might deem for the best interests of the company;

provided, water rights should in no case be sold for less than forty-three dollars per acre. It is argued, and the court found, that the so-called trust fund had been impressed with a lien for the plaintiff, and that he had a lien upon the stock itself. Under the agreement spoken of plaintiff was entitled to payment out of the proceeds of stock sales, but that would not give him a lien upon the stock itself, and unless he had such a lien the power that created the trust could also uncreate it and arrange for sales by the Irrigated Lands Company itself. It is evident that at that time the directors and stockholders of both companies had high hopes that the shares of stock and also land could be sold, and that sufficient would be realized to pay the fifteen notes heretofore mentioned and to complete the reservoir system. If those expectations had been realized the project would probably have been completed, and creditors would have been paid. But the stock was not salable. The $100,000 received from the $150,000 in notes had in the meantime been spent. The evidence does not show any waste of this money, or that it was not expended for proper purposes. All the money was used in development of the Price River System. Neither fraud, bad faith, nor culpable negligence were shown on the part of the directors, who are defendants here. George A. Smith, Albert Smith, and Thomas Austin were not directors until after the money realized from the sale of so-called trust stock had been expended, and they certainly could not be held liable on the theory on which the district court held them accountable.

It is well settled in this jurisdiction that directors are prohibited from preferring debts due to themselves when a corporation is insolvent. *Mercantile Co. v. Mt. Pleasant Co-op.*, 12 Utah, 213, 42 Pac. 869. When the notes referred to became due all of the individual defendants were given stock for the money paid out by them for the corporation. That was in the fall of 1909. Defendant George A. Smith received 600 shares of stock in consideration of $10,000 paid by him for the company, but at that time George A. Smith was not a director of the Irrigated Lands Company, and hence had a

right to accept a preference whether the company was insolvent at that time or not. Thomas Austin, who also paid a $10,000 note on which he had been guarantor, was a director at the time, and if the Irrigated Lands Company was insolvent he should account for the stock that was received by him when he was both director and creditor. But it is said that he was only a guarantor. Assuming that Mr. Austin was a guarantor only, it would not change the principle involved. If a director who is a creditor of an insolvent corporation may not prefer himself, it is immaterial whether he prefers himself as a principal or as a guarantor or indorser or surety. He has no right to do by indirection that which he may not do directly. The adjudicated cases are not in harmony on this subject, but we think the better rule is that an insolvent corporation has no right to prefer the debt of a creditor where a director of a corporation is liable therefor as indorser, guarantor, or surety. *Bosworth* v. *Jacksonville Nat. Bank,* 64 Fed. 615, 12 C. C. A. 331; *Merchants' Nat. Bank* v. *McDonald,* 63 Neb. 363, 88 N. W. 492, 89 N. W. 770; *Tillson* v. *Downing,* 45 Neb. 549, 63 N. W. 836; 7 R. C. L. section 776, p. 761.

The record shows that John Y. Smith was at all times a director of both corporations, and that he received 600 shares of stock in payment of his claim against the Irrigated Lands Company. The court found that Albert Smith received 600 shares of stock. Mr. Albert Smith did not pay as guarantor, but purchased three notes of $10,000 each on September 21, 1908, paying therefor $20,000. Mr. Smith testified:

"I was one of the original signers of the fifteen $10,000.00 notes, and the contract of August, 1908, signed by the fifteen guarantors. I purchased three of those notes September 21, 1908. I paid for them by check. Defendants' Exhibit 4 is one of the checks with which I purchased those notes. I issued another check for the same amount as that. I do not have that check. I have the stub from which I took it. I issued both checks at the same time, each for $10,000, one of them I can't find. For those two checks I received three notes. When those notes became due I made an effort to collect them. I never did collect them, because the Irrigated Lands Company I suppose didn't have any money to pay me. They offered me 1,800 shares of water stock in October

or November, 1909, if I recollect right. I didn't take it until I was forced to. I preferred the money in preference to the water stock. I finally took the water stock. I didn't make any investigation at that time to find out the value of the water stock. I didn't think there was any value on it. If there was it was a fictitious value. I simply had to take the water stock when they told me it was all they could give me. I took it for the money I paid. I took my chances of getting something out of it. I placed my stock on the market. Sold 300 shares at $11, practically sixty days after I got it. I think I have 250 or 275 shares in my name now."

When Mr. Smith bought the three $10,000 notes he was not a director, and if the corporation was willing to make the unusually liberal discount of $10,000 we fail to perceive in the transaction anything that would subject him to the charge of fraud or dishonesty. However, in 1909, when he presented the purchased notes for payment, he was a director, and if the company was then insolvent or in imminent danger of insolvency, he was not justified in accepting the 1,800 water shares and appropriating them for the payment of debts due him and thus deprive other creditors of a fund to which they were primarily entitled. It may be possible that Mr. Smith had no suspicion of the insolvency of the Irrigated Lands Company, if it was insolvent, but it will not do to say that he did not know the financial condition of the corporation of which he was a director. It was his duty to know, and he is presumed to have known, the financial status of the corporation.

The question here arises whether the Irrigated Lands Company was insolvent or in imminent danger of insolvency in 1909. John Y. Smith, a director of both corporations from the dates of incorporation and continuing as a director thereafter, testified that the Irrigated Lands Company was insolvent when it conveyed the Mammoth Reservoir to the Price River Irrigation Company, and that it was insolvent from October 24, 1908. According to his testimony the Irrigated Lands Company was a venture in high finance, and was little more than a wild speculation, with assets that were at all times dubious. In its answer to plaintiff's amended complaint the Price River Irrigation Company alleges that on January 28, 1910, the Irrigated Lands Company was

indebted to various creditors in the sum of $300,000, and was therefore wholly bankrupt. On the other hand, we find in plaintiff's amended complaint the statement that the property transferred to the Price River Irrigation Company was worth, and still is worth, at least the sum of $200,000. The issue as to whether the Irrigated Lands Company was insolvent in 1909 is not directly raised in the pleadings, nor is a direct finding made on the subject. With the record in this condition we are not inclined to direct what finding should be made as to insolvency in 1909. Neither are we inclined to direct what findings should be made as to the value of the Price River stock or water shares in 1909. The price fixed in the trust agreement was purely a paper or fictitious value. So was the twenty-five dollars par value. It occurs to us that the price at which the directors say they took it, that is, sixteen dollars and sixty-six and two-thirds cents per share, would be a more just basis of liability if the Irrigated Lands Company was insolvent in 1909.

The district court is therefore ordered to permit plaintiff, if he so desires, to amend his supplemental complaint, and permit the parties to offer further testimony on the issue of insolvency of the Irrigated Lands Company in 1908, and 1909, and if the corporation is found to have been insolvent or in imminent danger of insolvency in 1909 the court is further directed to find that the following directors took water shares or stock belonging to the Irrigated Lands Company for money due them at a time when they had no right to be preferred creditors, to wit, John Y. Smith, 600 shares; Thomas Austin, 600 shares; and Albert Smith, 1,800 shares. As to George A. Smith the judgment is reversed. As to John Y. Smith, Thomas Austin, and Albert Smith it is reversed, with directions to proceed further in the case as above indicated, if plaintiff desires to amend his complaint. In all other respects judgment affirmed. All costs to be taxed against Price River Irrigation Company.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.