## ELGGREN et al. v. WOOLLEY.

No. 4101.   Decided September 2, 1924.   (228 Pac. 906.)

1. CONTRACTS—CONTRACT GIVING DIRECTOR PECULIAR BENEFITS FOR ASSISTING DEFENDANT IN GETTING CONTROL OF CORPORATE ASSETS HELD VOID.   Contract between director of insolvent corporation and defendant, by which latter was to reimburse director on account of his investments in corporation in consideration of director using his official influence to have corporate property transferred to defendant, *held* not enforceable against defendant as against public policy; director obtaining benefit not shared by other stockholders.

2. CORPORATIONS—ACTS OF DIRECTORS PROHIBITED OR AGAINST PUBLIC POLICY CANNOT BE RATIFIED.   Acts of directors prohibited by statute or against public policy cannot be ratified by stockholders.

3. CONTRACTS—PARTY WHO RATIFIES MUST KNOW ALL THE FACTS.   No ratification takes place unless all the facts are known to those who have the power to ratify.

4. CORPORATIONS—MAY AVOID OR AFFIRM AND ENFORCE CONTRACT MADE BY DIRECTORS IN WHICH DIRECTORS ARE INTERESTED.   Corporation may avoid contract made by directors in which directors are personally interested, or may elect to affirm the contract and enforce it against the party who was a party to the wrong.

5. CONTRACTS—ILLEGALITY OF DIRECTOR'S CONTRACT WITH DEFENDANT BECAUSE OTHER STOCKHOLDERS DID NOT PARTICIPATE IN BENEFITS AVAILABLE TO DEFENDANT.   Illegality of contract between party who took over corporation's property and director, giving director benefits not given other stockholders, *held* available to such party in director's action for breach of contract, though such party participated in the wrong.

6. CORPORATIONS—DIRECTORS POSSESS POWERS VESTED IN CORPORATIONS.   Directors possess all powers vested in corporations.

7. CORPORATIONS—ACT OF DIRECTOR NOT EQUITABLE TO ALL STOCKHOLDERS NOT SANCTIONED BY COURTS.   Courts cannot sanction any act on the part of directors which is not fair, just, and equitable to all the stockholders.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Action by A. F. Elggren, A. J. Elggren, and L. E. Elggren, copartners, doing business in the name of Elggren Bros. & Co., against Ernest R. Woolley. Judgment of dismissal, and plaintiffs appeal.

AFFIRMED.

*Soule & Spalding* and *Ray Christensen,* all of Salt Lake City, for appellants.

*Van Dam & Draper* and *D. N. Straup,* all of Salt Lake City, and *Arthur Woolley,* of Ogden for respondent.

See 13 C. J. §§ 440, 452; 14A C. J. §§ 1842, 1868 (1926 Anno) 1891, 1892.

FRICK, J.

The plaintiff's hereinafter called appellants, as copartners doing business under the name and style of Elggren Bros. & Co., brought this action against the defendant to recover the sum of $13,000 with legal interest.

In the complaint it is alleged that appellants, between the 18th day of January and the 9th day of July, 1917, had "invested in bonds of the Montana-Utah Sugar Company, a corporation, * * * in the sum of $9,500, and during the same period plaintiffs had also invested in capital stock of said sugar company in the sum of $3,500" for which stock certificates representing 165 shares had been issued to them; that "during the months of November and December, 1917, the defendant entered into negotiations with the plaintiffs to purchase * * * said bonds and stock and undertook and agreed to and with the plaintiffs that if the plaintiffs would sell, transfer and deliver to the defendant or to his representatives their said bonds and stocks in said sugar company, and would surrender up to the defendant and his representatives all their interest in said bonds of said sugar company and execute and deliver a release of the properties of said sugar company from the said trust deed securing said bonds

so as to assist and enable the defendant and his agents and representatives to take over the properties and holdings of said sugar company and would pay to the defendant the sum of $2,000 in cash, that the defendant would then construct, complete and operate a sugar factory for said sugar company then in the course of erection near Hamilton, in the Bitter Root Valley, Mont., and would make a sale of the properties of said sugar company within two years after payment to him, the defendant, of said $2,000 cash by plaintiffs, and that he, the defendant, would within two years from the said 17th day of November, 1917, refund and pay to the plaintiffs the sum of $15,000''; that pursuant to such agreement the appellants, on the 17th day of November, 1917, ''sold, indorsed and delivered to defendant and his representatives'' said certificates of stock, and that appellants had fully performed their part of the agreement aforesaid; that defendant had failed to perform the obligations of his said agreement, stating the particulars in that regard, and that there is due the plaintiffs from the defendant the full amount of $13,000 with legal interest, for which they prayed judgment.

The defendant appeared in the action and filed an answer in which he in effect denied the allegations of the complaint, and, as an affirmative defense, pleaded the statute of frauds.

The evidence produced on behalf of appellants disclosed that in 1916 a number of individuals organized a corporation known as the Montana-Utah Sugar Company, hereinafter called company, with a capital stock of $750,000 divided into shares of the par value of $25 each; that in addition to said stock the organizers of the company attempted to finance the enterprise by issuing $500,000 in bonds which were to be secured by a trust deed upon the property of the company; that in order to sell the bonds, what is called an underwriter's agreement was prepared, by the terms of which each subscriber agreed to take a certain number of the bonds and pay therefor by advancing 10 per cent. of the amount subscribed each month, and the stock subscriptions were to be paid in the same manner; that appellants as co-

partners, in their partnership name, subscribed for $25,000 worth of the bonds, and during the first six months of the year 1917 had advanced the sum of $9,500 as part payment thereof, and during said time also bought stock and paid therefor the sum of $3,500, so that they had invested in bonds and stock in the sum of $13,000; that no bonds were ever issued or delivered to any of the subscribers, and most of the stock appellants had bought was obtained by them from private sources; that in April, 1917, A. F. Elggren, one of the appellants, was duly elected a member of the board of directors of the company and thereafter qualified and acted as such, as hereinafter appears; that during the forepart of the summer of 1917, and especially in July and thereafter, the company was in financial straits and was unable to pay for the material that had been purchased for the erection of the sugar factory or to pay the laborers who were employed by the contractors; that in July all of the subscribers for bonds refused to make any further payments upon their subscriptions, and the company was entirely without funds to proceed further; that thereupon attachment suits were instituted, and attachments issued and levied upon the assets of the company and the property of the company was taken into the custody of the law; that at about the same time bankruptcy proceedings were instituted against the company and either a referee or a trustee in bankruptcy (the evidence is not clear which) was appointed and the assets of the company were appraised (it does not appear what amount the appraisement was); that a part of the assets of the company consisted of a building site of some 75 or 80 acres which was donated upon the condition, however, that if the company failed to complete and operate a sugar factory the land should revert to the donors; that with the affairs of the company in that condition the company was unable to proceed further, and various attempts were being made to find some individuals or some organization to take over the enterprise and to pay the debts of the company; that several propositions with that end in view were made to the company, but all of them failed of consummation; that early

in November, 1917, according to the testimony of appellants, the defendant represented to them that he had a plan or scheme whereby he could complete the sugar factory and could dispose of the plant if he could obtain the release of the stockholders and bond subscribers, and with that end in view he made the following proposition to the appellants, namely, that if they would transfer all of their stock and interest they had in the bonds to him and would release the company from all liability to them and advance to him $2,000 in cash, he would, within two years, or sooner if he could, repay them the $2,000 so advanced together with the $3,500 they paid for stock and the $9,500 they had advanced on the bonds, and that the appellants should be released from all obligations to pay their unpaid subscription for bonds, then amounting to $14,500; that the appellants accepted defendant's proposition and advanced him the sum of $2,000; that thereafter, on the 1st day of December, 1917, defendant's proposition was duly presented to the board of directors of the company, and the following resolution was offered by Director O. C. Beebe and seconded by Director A. F. Elggren, one of the appellants, to wit:

"Whereas, the Montana-Utah Sugar Company is insolvent and is no longer able to discharge its liabilities, and whereas there are numerous claims, liens and judgments outstanding against the company, which the company is unable to pay, be it resolved that the foregoing proposition made by Ernest R. Woolley be accepted, subject to confirmation by the stockholders of this company." .

The evidence further disclosed that said resolution was duly adopted, and thereafter, on December 12, 1917, the action of the board of directors was duly approved by the stockholders of the company.

We remark that we have merely copied that portion of the resolution which appears in the bill of exceptions, and it there appears that not all was copied.

It also appears from the evidence that the appellants, when they delivered their stock, took a receipt for the same, and they, or at least some of them, attended the stockholders' meeting which was subsequently held and which ratified the acts of the board of directors. It is, however, contended by

them that they did so in the interest of the defendant. A. F. Elggren also testified that he acted as the director of the company at the request of the defendant, and to assist him in accomplishing his purpose in taking over the property of the company. It also appears that pursuant to the proposition of the defendant all of the stockholders released their claims against the company and that the board of directors released all the interests of the company to him. It also appears that the defendant repaid to the appellants the sum of $2,000 which they had advanced to him but refused to pay any further sum.

Upon substantially the foregoing evidence the appellants rested their case, and the defendant moved for a nonsuit upon various grounds, among which was the ground that in view of the whole evidence the agreement testified to by appellants, and upon which this action is predicated, was against public policy and therefore void.

The district court, in passing upon the motion for nonsuit, said:

"Mr. A. F. Elggren, one of the plaintiffs, testified that the release to the company was the release contemplated by the agreement with the defendant; that he acted as a director at the meeting in December, 1917, when the offer made by the defendant to the company was accepted, and he and one other of plaintiffs were present at the stockholders' meeting in the same month when the action of the board of directors in turning the company's property over to the defendant was ratified.

"It appears that the plaintiffs were to recover back every dollar they had invested, either for stocks or bonds in this sugar company, and that the consideration for that was alleged in their complaint, that they 'assisted the defendant and his agents and representatives in taking over the control of said company' and its rights and properties. This alleged assistance was given by one of the plaintiffs as a director of the company. No other stockholder, so far as the evidence discloses, received any part of his investment back.

'The only fair conclusion to be drawn from the evidence is that the other bond subscribers were released on their subscriptions and that, by assuming the obligations of the company, its assets were transferred to the defendant. The money paid for stock and on bond subscriptions was a total loss to the other stockholders. The plaintiffs, then, by one of their number on the board of directors,

bargained away all of the investments of the other stockholders that they might themselves be made whole.

"The assistance which the plaintiffs were to give to the defendant, and which is pleaded as a part of the contract on which this suit is brought, was, according to the plaintiffs' own testimony, the acts and influence of a director of the corporation. Such a contract cannot be enforced in a court of law. It is against public policy, and if the money had been paid on this contract it would not be the plaintiffs' money. They could be compelled to turn it over to the other stockholders of the company to be distributed pro rata among the stockholders or bond subscribers.

"I don't know of any case that would come so squarely within the rule laid down that such contracts are void and will not be enforced in a court of law as the contract sued on in this case. The evidence seems to leave no doubt about that being the fact. The motion for nonsuit must be granted."

The court entered judgment dismissing the action; hence this appeal.

Numerous errors are assigned, but practically only one is argued, namely, that the district court erred in granting a nonsuit upon the ground stated in its decision.

Appellants' counsel contend that the transaction between appellants and the defendant amounted to no more than a sale by them of their stock and interests in the company for which defendant agreed to pay appellants the amount they had invested, including the $2,000 which they had advanced to him to aid him to consummate the proposed plan or scheme to take over the property of the company. The district court, as appears from its decision, however, took a different view, and, after carefully reading all of the testimony of appellants, together with the documentary evidence, in the light of their statements upon cross-examination, we are likewise forced to the conclusion that the agreement, between defendant and appellants, and which is the basis of this action, was not merely a sale of appellants' stock and interests in the company, but that, in view of A. F. Elggren's official relationship to the company, and in further view of his acts and conduct subsequent to the making of the agreement, it was such an agreement that the courts will not enforce as between the parties. The evidence admits of no doubt whatever that A. F. Elggren, one of the appellants,

was a member of the board of directors of the company and that he acted as such during all of the transactions involved here; that he used his official influence and vote to accomplish the purposes of the defendant in obtaining possession and complete control of the property and affairs of the company; and that Elggren and his partners, if the agreement is enforced, will obtain an advantage and a benefit which other stockholders do not and cannot enjoy.

We here have a corporation which, in any view that can be taken, was insolvent and utterly unable to meet its financial obligations. In addition to that, appellants had assumed an obligation to advance to the company an additional sum of money amounting to $14,500 which, no doubt, was a legal as well as a moral obligation. In view of the financial condition of the company, there was thus very little, if any, hope left that appellants would be compensated for their investments in the company, and certainly no hope that they would ever receive any profits from their investments. All the stockholders and subscribers for bonds fully believed that the enterprise was a complete failure and hence proceeded to abandon the same by refusing to make further payments upon their underwriting agreements. In view of this, how can it reasonably be contended that any sane person, however wealthy, would take over the affairs of the company and pay the stockholders the full amount that they had advanced for stock and the proposed bonds which were not issued, and, in view of the insolvency of the company, would not be issued? True, counsel for appellants insist that the promise to pay appellants $15,000 was not based upon any promise by appellants that A. F. Elggren would use his official influence and vote to assist the defendant in accomplishing his purpose and hence the agreement entered into between them is not against public policy. While it is true that, according to the testimony given by appellants upon their direct examination, such may be the case, yet when their testimony on cross-examination is considered in the light of their subsequent acts and conduct, there can be no doubt that it was intended that A. F. Elggren's official acts and

vote should be exercised in favor of the defendant. In these
matters the law regards substance rather than form.
The law respecting the duty of the officers and di-
rectors of corporations is well settled. In 3 Fletcher,
Cyc. Corps. § 1754, it is said:

"The directors 'represent all of the stockholders and creditors,
and cannot enter into agreements either among themselves or with
stockholders, by which they abdicate their independent judgment.'"

In 14a C. J. § 1891, p. 122, it is said:

"A director or other officer may not either directly or indirectly
derive any personal profit, benefit, or advantage by reason of his
position that is not enjoyed in common by all the stockholders.
He will not be permitted to retain any secret profits made by him
in breach, or in disregard, of his fiduciary relation but will be
required to account for such profits to the corporation. Neither
will the courts enforce a secret agreement made by him with an-
other person whereby he is to derive a personal benefit in fraud
of the other stockholders. It is immaterial that the corporation
was not damaged by the transaction in which the profits were
made, or that he acted throughout in the highest good faith and
without intent to injure the corporation, or that the means used
to accomplish the unlawful end would, standing alone, be lawful.
Nor do the vermiculations by which the unfaithful officer endeavors
to conceal the real nature of the transaction have any other effect
than to show his guilty scienter, and thus furnish evidence against
him."

In 2 Thompson on Corps. (2 Ed.) § 1216, the distinguished
author, in speaking of the duty of corporation directors,
says:

"In all contracts they make they represent the stockholders and
not themselves; and in all their official actions they are to consider,
not their private interests, but that of the stockholders, whose
property they manage and control. This rule is so strict and so
rigidly enforced that the law will not permit these officials to sub-
ject themselves to any temptations to serve their own interest in
preference to the interest of the stockholders."

The foregoing excerpts are supported by all well-considered
cases, among which we refer to the following: *Thomas* v.
*Brownville, etc., Ry. Co.,* 109 U. S. 522, 3 Sup. Ct. 315, 27
L. Ed. 1018; *West* v. *Camden,* 135 U. S. 507, 10 Sup. Ct. 838,
34 L. Ed. 254; *Guernsey* v. *Cook,* 120 Mass. 501; *Forbes* v.
*McDonald,* 54 Cal. 98; *Wardell* v. *Railroad Co.,* 103 U. S.

651, 26 L. Ed. 509; *Holladay* v. *Patterson*, 5 Or. 178; *Timme* v. *Kopmeier*, 162 Wis. 571, 156 N. W. 961, L. R. A. 1916D, 1114.

In *West* v. *Camden*, supra, the law is clearly stated that an agreement entered into by directors under circumstances like those in the instant case is against public policy and unenforceable. And to that effect are all the cases to which we have referred.

In *Timme* v. *Kopmeier*, supra, the court, in the course of the opinion, says:

"Directors of a corporation occupy a position of trust and confidence and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them. The directors of a corporation are not permitted to use their position of trust and confidence to further their private interests, nor to become parties to contracts concerning corporate affairs intrusted to their management which conflict with a free and impartial discharge of their duties toward the stockholders. Any participation by them in contracts dealing with matters of corporate interest which is antagonistic to their free and impartial discharge of official duties is denounced by the law, unless all of the stockholders with full knowledge assent thereto. This doctrine is declared in *West* v. *Camden*, 135 U. S. 507, 10 Sup. Ct. 838, to be applicable 'to the directors of a private corporation, charged with duties of a fiduciary character to private parties, on the view that it is public policy to secure fidelity in the discharge of such duties.'"

In the opinions in those cases many other cases are cited to which it is not necessary for us to refer here.

In view of the law as it is laid down in the authorities, how can it be said that A. F. Elggren was not influenced in voting in favor of defendant's proposition? If defendant's proposition were rejected, then all of his plans would necessarily fail and appellants would not be repaid the money they had invested in the company. If, however, we take a narrower view and should hold that the appellants had sold their stock outright, the difficulty still remains that unless the company released the stockholders from their obligations which they had assumed under their stock and bond subscriptions they would not only remain liable to the company but to the creditors of the company as well. Quite apart from the fact, therefore, that appellants were to receive full repay-

ment of their investments, they are vitally interested on being released from their obligations ot the company and to its creditors. Such a release could only be obtained if defendant succeeded in effectuating his plans, by obtaining possession and control of the company's property and by satisfying its creditors. Certainly no agreement entered into between appellants and defendant could release appellants from their obligations to the company. Neither could the company release them without the consent of its creditors or by paying their claims. In either view that may be taken, therefore, the appellants were interested in having defendant's plans carried out, all of which might and no doubt did depend upon Elggren's influence and vote as a director of the company.

It is, however, suggested that the ratification of the acts of the board of directors by the stockholders distinguishes this case from cases affecting acts of directors in which they are interested. Not so. Acts that are prohibited by statute or which are against public policy cannot be ratified. 14a C. J. § 1868, p. 100. And to that effect are all of the authorities. There was no ratification in this case, however, and none was legally possible for the reason that the stockholders other than the appellants had no knowledge of the agreement between them and the defendant by the terms of which the appellants were to receive the full amounts they had paid to the company for their stock and for bonds. If that fact had been known to the stockholders, the result might easily have been different. It is elementary, however, that no ratification takes place unless all the facts are known to those who have the power to ratify.

It is true that in some circumstances directors may enter into a contract by which they seek to bind the corporation and in which they are interested, and for that reason the contract may be voided by the corporation, yet it may, nevertheless, elect to affirm the contract and enforce it against the party who was a party to the wrong. We have no such case to deal with here. Here the director

who was a party to the wrong seeks to reap the fruit of his own wrongful act.

It is also intimated that the defendant should not be permitted to take advantage of his wrong and defeat recovery of the money he had agreed to pay after he had obtained possession and control of the company's property. With that we have no concern. The law in that regard is well stated by the Supreme Judicial Court of Massachusetts in *Guernsey* v. *Cook,* supra, which was a case involving the identical principal which is involved in the instant case. In the course of the opinion the court said:

> "The objection that the contract is illegal, although it comes with no good grace from the defendant, is allowed to prevail, not as a protection to him, but for the sake of the public good, and because the court will not lend its aid to enforce an illegal contract. *Myers* v. *Meinrath*, 101 Mass. 366; *Taylor* v. *Chester*, L. R. 4 Q. B. 309."

But, independently of all that has been said, courts cannot sanction any act on the part of directors of corporations (who in this jurisdiction possess and exercise all the powers vested in corporations) which is not fair, just, and equitable to all of the stockholders. And that is especially true where, as in this case, the corporation is in financial difficulties. In the present age most all business enterprises are conducted and controlled by corporations through their directors and officers. If the door is once opened so that the officers who are in charge of the affairs of corporate entities can by secret agreements with creditors or with others protect their own interests to the detriment of the corporation and the stockholders, then the transaction of business by corporations will soon come to an end. It is for that reason, as Mr. Thompson in effect says, that courts have adopted and are strictly and rigidly enforcing a policy which minimizes the temptation of officers of corporations to prefer their own interests rather than those of the corporation and the stockholders. Such a policy is just and wholesome and should be enforced regardless of the consequences in individual cases.

We have carefully examined all of the cases cited by ap-

pellants' counsel in their brief, among which are *Diminick* v. *Collins,* 24 Wash. 78, 63 Pac. 1101; *Fidelity & Deposit Co.* v. *City of Stafford,* 93 Kan. 539, 144 Pac. 852; *Peters* v. *Waverly Water-Front, etc., Co.,* 113. Va. 318, 74 S. E. 168; and *Hoggan* v. *Price Irr. Co.,* 55 Utah, 170, 184 Pac. 536. There is nothing in any of those cases which in any way sustains appellants' contention, while, upon the other hand, some of the cases they refer to in their brief clearly sustain the principle announced in the cases we have cited in support of defendant's contention.

Without going into further detail, it must suffice to say that the judgment of the district court is clearly right, and it is therefore affirmed, with costs.

WEBER, C. J., and GIDEON, THURMAN and CHERRY, JJ., concur.