# A. C. PETTERS COMPANY, INC. v. ST. CLOUD ENTERPRISES, INC., AND OTHERS.

222 N. W. 2d 83.

September 20, 1974—No. 44276.

*Hall, Byers, Hall & Hanson* and *Thomas L. Dueber,* for appellant.

*Reicher & Wenner, Edward M. Reichert, Jr., John R. Koch,* and *Karl Petters,* pro se, for respondents.

Heard before Knutson, C. J., and Kelly, Todd, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

Plaintiff, A. C. Petters Company, Inc., brought this action in district court to impose a constructive trust in its favor upon a certain tract of land purchased by defendant St. Cloud Enterprises, Inc., through its officers and controlling shareholders, defendants Karl Petters, Edward Reichert, Jr., and Thomas Hartmann, respectively acting as managing officer, attorney, and accountant of Petters Company at the time of the purchase, upon the theory that the individual defendants, in purchasing said tract of land, had breached their fiduciary duties to Petters Company by appropriating a business opportunity properly be-

longing to the company. After considering the parties' depositions, briefs, and arguments, the trial court awarded summary judgment for defendants basically upon the ground that Petters Company was financially unable to avail itself of the business opportunity presented. We affirm.

A. C. Petters Company, Inc., is a corporation which was founded by Al Petters during the 1950's to engage in the sand, gravel, and premix cement business. Al Petters, its founder and controlling shareholder, acted as president of the company until January 1968. At that time, he transferred control of the business to defendant Karl Petters, his nephew, the corporate stock being transferred upon payment being made by Karl Petters with funds received from a loan secured by a mortgage on the corporate property. The mortgage loan which supplied the funds for the sale was also secured by the personal guarantees of both Al Petters and Karl Petters. Because of Al Petters' personal obligation on the mortgage loan, he in effect retained an interest in Petters Company and retained, as part of the agreement, the right to retake control and direction of the company. Karl Petters continued to operate Petters Company until May 1972, at which time Al Petters, exercising his rights under the agreement, resumed management of the corporation.

During the period in which defendant Karl Petters served as managing officer and director and controlling shareholder of Petters Company, defendant Edward M. Reichert, Jr., served as its corporate attorney and defendant Thomas Hartmann served as its accountant. Defendant St. Cloud Enterprises is a corporation formed out of an empty "shell" of a corporation previously incorporated by defendant Reichert. St. Cloud Enterprises was "rejuvenated" primarily for the purpose of acquiring the tract of land which is the subject of this action. At the time of purchase of the land in question, the individual defendants held all of the stock of St. Cloud Enterprises and served as its officers and board of directors. The depositions showed that the business of St. Cloud Enterprises has consisted of only two land

dealings, one concerning the parcel in question and the other concerning a small parcel which was transferred to St. Cloud Enterprises from defendant Reichert.

The land in question consists of approximately 47 acres and is located adjacent to lands either owned by Petters Company or owned by Al Petters and leased to Petters Company, which premises housed the office, plant, and equipment used in quarrying and processing sand and gravel. The land appears to have the same geological qualities as the other lands owned by and leased to Petters Company by Al Petters. It was conceded by defendants that the parcel would provide additional lands adjacent to the plant from which to quarry sand and gravel.

The 47-acre parcel was formerly owned by one John Hess. Much of the other land on which the Petters Company operated had also been purchased by Al Petters as an individual from Mr. Hess. Upon the latter's death, the 47-acre parcel was put up for sale over a period of about 2 years, first by his estate and later by his widow.

Recognizing that the parcel in question had a "distinct, special value" to Petters Company, Karl Petters, while acting as an officer of Petters Company, determined that the company should purchase it. In an attempt to secure financing for Petters Company, Karl Petters approached the First American National Bank of St. Cloud, the same bank which had financed Karl Petters' purchase of Petters Company stock from Al Petters. The depositions of both Karl and Al Petters establish without refutation that the bank refused to extend any further credit to Petters Company, informing Karl that Petters was "overlined" or had gone beyond the limit of its credit. The depositions similarly bear out the fact that the financial condition of Petters Company was critical at the time the subject parcel was available. It was conceded that all of the company's assets were encumbered and that the company was at least $400,000 in debt and insolvent in the sense that it was delinquent in the payment of many of its accounts. The following testimony by Al Petters

illustrates the critical financial condition of Petters Company during the time the subject land was up for sale:

"Q. Okay. Were you aware in February of 1970 that the corporation was having some financial difficulties?

"A. Yes.

"Q. Were you aware that they, that the corporation was already having loans with the First American National Bank up to the capital limits?

"A. Yes.

"Q. So you were aware that A. C. Petters Company could not obtain any further money or any further loans from the First American National Bank at that time?

"A. Well, they could obtain them when I was signing the notes.

"Q. Well, unless you were going to sign the notes for them, unless you were going to guarantee the notes,—

"A. That's right.

"Q. —they could not, is that right?

"A. (Nods head affirmatively.)

"Q. Then let me ask you this then: Had the corporation entered into any kind of a purchase agreement to purchase that property, would you have signed the note?

"A. Well—

"Q. Guaranteeing it?

"A. Well, if the property would have been put in my name.

"Q. In your name only?

"A. Yes.

"Q. Otherwise you would not have?

"A. No."

Prior to the appropriation of the subject parcel by St. Cloud Enterprises, Karl Petters offered the opportunity to his uncle, Al Petters. Al Petters, however, refused the offer, responding to the effect that he "wanted to get out of business" and that he "didn't want to buy anything more at his age."

Subsequent to both his uncle's expressed lack of interest in the opportunity and his own unsuccessful attempt to gain financing of the purchase for Petters Company from the First American National Bank, Karl Petters joined with defendants Reichert and Hartmann as St. Cloud Enterprises and purchased the land from Mrs. Hess for the sum of $28,000. Financing for the purchase was effected through a mortgage loan from Zapp National Bank of St. Cloud in the amount of $30,000. While defendant Hartmann was unsure as to whether he personally guaranteed the mortgage loan, defendant Reichert's unrefuted testimony was that each of the defendants was required to guarantee the loan, adding that their personal guarantees provided the "only way the Zapp Bank would * * * loan ten cents to the [St. Cloud Enterprises] corporation."

After defendants had acquired the subject parcel for themselves, they arranged for Petters Company to enter into a "Pit Lease and Royalty Agreement" with St. Cloud Enterprises. The agreement provided that Petters Company would pay St. Cloud Enterprises a minimum annual rental or royalty of $3,600, payable in monthly installments of $300 or more, depending on the amount of material removed from the land during each month. It is significant to note that St. Cloud Enterprises charged Petters Company ten cents per cubic yard of quarried material, a rate which Al Petters admitted was reasonable and which Petters Company was paying him as a royalty under a pit lease of lands independently owned by him, which lease had been entered into when he was managing officer, a director, and controlling shareholder of Petters Company. Moreover, Karl Petters testified in his deposition that all sales of the sand and gravel and principally black dirt from the St. Cloud Enterprises property were profitable to Petters Company.

This court, in Miller v. Miller, 301 Minn. 207, 222 N. W. 2d 71 (1974), set forth the proper standards to be applied in determining whether a business opportunity properly belongs to the corporate entity claiming it. Entertaining the first consideration

of the two-step analysis adopted therein, we hold as a matter of law that the business opportunity manifested in the sale of the parcel in question does not constitute a "corporate" opportunity. Though Petters Company possessed the fundamental knowledge and practical experience required to utilize the opportunity, and the opportunity was admittedly intimately related and of "distinct, special value" to Petters Company and its reasonable needs and aspirations, the undisputed testimony conclusively establishes that the company was financially unable to avail itself of the business opportunity.

On the record before us, it appears that the parcel in question was available solely by means of an outright cash purchase and sale. Absent any evidence which would at least raise a reasonable inference that the business opportunity was available to the complaining corporation on other terms, we cannot speculate as to the existence of such possibilities. Suffice it to say that the evidence on this record fails to raise a reasonable inference that the business opportunity was available to Petters Company on any terms other than an outright cash sale and purchase.

The undisputed evidence compels a finding that Petters Company lacked the financial means needed to acquire the parcel of land. As mentioned previously, it was conceded by each of the parties that all of the assets of Petters Company were encumbered and that the company was at least $400,000 in debt and delinquent in the payment of its current liabilities. In his deposition, Al Petters also admitted that he refused to provide funds for the purchase of any more land for the corporation. He also rejected purchasing such land in his own name because of his retirement. Needless to say, as managing officer of Petters Company, Karl Petters was left with only the alternative of pledging his personal funds to acquire the subject parcel for the corporation. It is a universal common-law rule that a corporate officer has no specific duty to use or pledge his personal funds to enable the corporation to take advantage of a business oppor-

tunity.[1] Thus, assuming, without deciding, that defendants Reichert and Hartmann also had a fiduciary relationship with Petters Company, neither Karl Petters nor his codefendants were required to pledge their own funds to assist Petters Company in purchasing the land.

Since Petters Company was financially unable to purchase the land upon the terms offered by the seller, the business opportunity thereby presented did not constitute a "corporate" opportunity under the standards set forth in Miller v. Miller, *supra*. Therefore, the acquiring officers are not subject to liability for their appropriation of the land, and there is no need to inquire into the factors relevant to the question of whether a business opportunity has been wrongfully appropriated by a corporate officer's breach of fiduciary duties.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] Hart v. Bell, 222 Minn. 69, 23 N. W. 2d 375 (1946). See, also, Slaughter, *The Corporate Opportunity Doctrine,* 18 Sw. L. J. 96, 101. But see, Irving Trust Co. v. Deutsch, 73 F. 2d 121 (2 Cir. 1934).