Larry NICHOLSON, Glen Bingham, Alicia Lewis, and Sorority Industries, a Nevada corporation, Plaintiffs and Appellants,

v.

George W. EVANS, Stanley B. Nelson, Terry E. Kay, Sorority, Inc., a Utah corporation, Aenco, Inc., a Utah corporation, and John B. Anderson, Defendants and Respondents.

Nos. 16559, 16621.

Supreme Court of Utah.

Feb. 23, 1982.

Bryce E. Roe and David E. Leta, Salt Lake City, for plaintiffs and appellants.

Richard J. Leedy, R. Brent Stevens, Harold G. Christiansen, Salt Lake City, for defendants and respondents.

OAKS, Justice:

This is an action by a parent corporation and its directors against their former directors and attorney and a subsidiary corporation for damages for breach of fiduciary duty or to establish the parent corporation's continued ownership of the stock of the subsidiary, for an accounting, and for other relief. The issue on these consolidated appeals is whether the directors of a parent corporation can acquire control of its subsidiary from a pledgee of the subsidiary's stock without offering the acquisition opportunity to the parent corporation through a disinterested majority of its directors. Answering that question, in effect, in the affirmative, the district court entered judgment on a jury verdict for the defendants. We reverse.

Because some of the requested relief was equitable, this case was not entirely "triable of right by a jury," Utah R.Civ.P. 38(b). However, plaintiffs demanded a jury trial, with defendants' apparent acquiescence, and the proceedings went forward as if the entire case were being tried by jury as a matter of right. Consequently, it is appropriate for this Court to review the decisions of the judge and jury on that same basis. Utah R.Civ.P. 39(c); *Willard M. Milne Investment Co. v. Cox*, Utah, 580 P.2d 607 (1978); *Houston Real Estate Investment Co. v. Hechler*, 47 Utah 215, 152 P. 726 (1915).[1]

■ Even viewing the evidence in the light most favorable to the defendants, as is appropriate in reviewing the jury's verdict in this case, *Mel Hardman Productions, Inc. v. Robinson*, Utah, 604 P.2d 913, 917 (1979), there is no substantial basis to support the jury's special verdict that defendants did not "breach their fiduciary duty" to the parent corporation. On the basis of evi-

dence that was essentially uncontested, plaintiffs' motions for a directed verdict or judgment notwithstanding the verdict on the issue of the parent's right to the subsidiary's stock should have been granted as a matter of law.

Viewed most favorably to the defendants, the essential facts are as follows: Sorority Industries (parent), a corporation whose stock was publicly held, was the beneficial owner of all of the stock of Sorority, Inc. (subsidiary), which was in the pie manufacturing business. This subsidiary was the parent's only valuable asset. Some of the parent's stockholders had received their stock in payment of debts owed to them by the subsidiary. Several years before the other events recited in this opinion, all of the subsidiary's stock had been pledged to a bank to secure repayment of a note whose original balance was $171,000. Both the parent and the subsidiary corporations were liable for this debt. Defendant Evans was chairman of the board of directors and chief executive officer of the parent and a member of the board and manager of the subsidiary. Defendants Nelson and Kay were members of the boards of directors and officers of the parent and the subsidiary.

In 1974 and 1975, the bank's successor in interest (creditor) brought various legal actions in the district courts in Utah seeking to collect the balance due on the note and to obtain control of the subsidiary through ownership of the stock pledged for its payment. In March, 1975, the directors of the parent advised its shareholders of the litigation and explained that the creditor would probably prevail. Financial statements of the subsidiary enclosed with this communication showed a deficit in earned surplus of $526,000 and a net stockholders' equity deficit of $35,000, as of December 28, 1974. In March, 1976, the creditor offered to settle the litigation for $70,000, payable $10,000 down and $60,000 in installments. The parent board of directors rejected the offer.

1. Our decision in *Romrell v. Zions First Nat'l Bank*, Utah, 611 P.2d 392 (1980), is not to the contrary. In that case, the entire requested relief was equitable, and the trial court equivocated in its treatment of the role of the jury by directing the submission of proposed findings of fact. Utah R.Civ.P. 52(a).

On February 3, 1977, the creditor again offered to settle for $70,000, this time payable in cash by February 14, 1977. On February 7, the parent and subsidiary boards of directors, meeting jointly, authorized Evans to attempt to procure a bank loan to settle the creditor's claim. In this same meeting, the corporation treasurer was authorized to reimburse Evans and Nelson out of corporate funds "if it becomes necessary that they have to use their personal means to protect the integrity of the company." Evans immediately approached the corporations' bank, but the bank declined to make the loan secured by the corporate properties (which had already been mortgaged to the bank). However, the bank offered to advance $50,000 to Evans and Nelson personally (secured by mortgages on their homes) if they could find another acceptable guarantor. Defendant Anderson, an attorney who had been retained to defend the parent and the subsidiary in the creditor's litigation to collect this note, agreed to serve as guarantor. The bank looked to the earnings of the subsidiary as the primary source for repayment of this loan.

On or about February 11, 1977, defendants Anderson, Evans, and Nelson formed a corporation, AENCO, Inc., of which they were the sole stockholders, each owning one-third of its outstanding stock. This corporation was admittedly formed solely for the purpose of facilitating loans and payments relating to the settlement of the creditor's claim on the note and the acquisition of the subsidiary's stock.

No further meeting was held to report to the corporations' directors on the bank's willingness to advance $50,000 to Evans and Nelson upon the receipt of security and a personal guarantee, even though the February 3d resolution of reimbursement seemed to contemplate just such an arrangement. No other bank or potential financing agency was approached to attempt to raise the $70,000 to settle the litigation. At no time during this critical period was any communication sent to advise the parent's stockholders of the imminent loss of the parent's principal asset, the pie making subsidiary,

or the conditions under which it could be saved.

Since 1972, the financial condition of the subsidiary had improved steadily, until the net stockholder's equity in February, 1977, was a positive $200,000 according to Evans and $305,000 according to another defense witness. The parent corporation's stockholders were not advised of this improvement. So far as the record shows, their last information of the financial condition of the subsidiary was the March 1975 report of (1) a December 28, 1974, net equity deficit of $35,000, and (2) the fact that the creditor would probably succeed in obtaining control of the subsidiary.

Before February 14, defendants Evans, Nelson, and Anderson, acting through their corporation, AENCO, Inc., and making personal guarantees, obtained the $50,000 loan from the bank. They also removed $20,000 from the funds of the subsidiary, for the stated purpose of repaying themselves for amounts the corporation owed them individually. On February 14, 1977, AENCO gave the creditor a check for $70,000 in settlement of the litigation on the note. Defendant Evans testified that his intent at that time was to give the parent corporation the benefit of this acquisition.

On March 24, 1977, the district court, in a proceeding in which defendant Anderson appeared in behalf of the various defendants, entered an uncontested summary judgment declaring the creditor the legal and beneficial owner of the outstanding shares of the subsidiary. On March 31, 1977, AENCO, Inc., advised the subsidiary corporation that the stock that had previously been held by the creditor should be reissued in the name of AENCO, Inc.

On April 1, 1977, Evans, Nelson, and Kay resigned from the parent's board of directors. On or immediately after that date, they notified the shareholders of their resignations and of the fact that a judgment had been entered declaring the creditor the owner of all of the common stock of the subsidiary. Plaintiff Bingham, a director of the parent corporation, thereupon ap-

pointed plaintiffs Lewis and Nicholson, who were stockholders, to serve with him as interim directors. All were subsequently elected by the parent's stockholders. After failing in their efforts to regain the stock and control of the subsidiary from defendants, the plaintiff directors and the parent corporation instituted this action.

By the time of the trial of this case, in January and February, 1979, the $50,000 bank loan defendants had used to acquire the subsidiary's stock had been reduced to $15,000. All payments had been made from the earnings of the subsidiary. At trial, Evans testified that he and Nelson initially purchased the subsidiary's stock from the creditor to protect the subsidiary and its employees, and to hold the stock as security for the subsidiary's payment of the more than $100,000 it owed to Evans and Nelson, thereby securing their claims in preference to the other creditors. However, he admitted, they later assumed ownership and control of the subsidiary and declined to recognize the parent's beneficial interest in the stock and subsidiary.

The fiduciary duties of defendant Anderson, the corporations' attorney, are not before us on this appeal because Anderson settled with the plaintiffs while the trial was in progress, and by stipulation of all parties the claims against him and his counterclaims were dismissed with prejudice.

■ Directors and officers have a fiduciary duty of loyalty to their corporation and its stockholders. *Branch v. Western Factors, Inc.*, 28 Utah 2d 361, 502 P.2d 570 (1972); *Elggren v. Woolley*, 64 Utah 183, 228 P. 906 (1924); *Durfee v. Durfee & Canning, Inc.*, 323 Mass. 187, 80 N.E.2d 522 (1948); *Guth v. Loft*, 23 Del.Ch. 255, 5 A.2d 503 (1939). They are obligated to use their ingenuity, influence, and energy, and to employ all the resources of the corporation, to preserve and enhance the property and earning power of the corporation, even if the interests of the corporation are in conflict with their own personal interests. This duty extends to all of the corporation's assets, including its subsidiary corporations.

As this Court held in *Glen Allen Mining Co. v. Park Galena Mining Co.*, 77 Utah 362, 387, 296 P. 231 (1931):

The duty of the directors of a corporation is to further the interests and business of the association and to conserve its property. Any action on the part of directors looking to the impairment of corporate rights, the sacrifice of corporate interests, the retardation of the objects of the corporation, and more especially the destruction of the corporation itself, will be regarded as a flagrant breach of trust on the part of the directors engaged therein. 2 Thompson on Corporations, 1327.

As this Court said in another leading case:

[In an effort to assure that corporate directors' acts are] fair, just, and equitable to all of the stockholders ... courts have adopted and are strictly and rigidly enforcing a policy which minimizes the temptation of officers of corporations to prefer their own interests rather than those of the corporation and the stockholders.

*Elggren v. Woolley*, 64 Utah at 194, 228 P. at 910.

The fiduciary duties owed to a corporation are especially vital when the corporation is in financial difficulty. Then, of all times, those responsible for the management of the corporation must realize "that their personal interests are subordinate to that of their corporation in case of conflict." *Hoggan & Hall & Higgins, Inc. v. Hall*, 18 Utah 2d 3, 6, 414 P.2d 89, 91 (1966); *Glen Allen Mining Co. v. Park Galena Mining Co.*, supra.

■ Pursuant to this fiduciary duty of loyalty, the so-called corporate opportunity doctrine forbids a corporate director from acquiring for his own benefit an opportunity that would have been valuable and germane to the corporation's business, unless that opportunity is first offered to the corporation and declined by a disinterested board of directors, or, where that is not

possible, by action of the stockholders.[2] *Runswick v. Floor*, 116 Utah 91, 96–97, 208 P.2d 948, 951 (1949); *Glen Allen Mining Co. v. Park Galena Mining Co., supra; Gaynor v. Buckley*, 203 F.Supp. 620, 627 (D.Or. 1962), aff'd on other grounds, 318 F.2d 432 (9th Cir. 1963); *Kerrigan v. Unity Savings Association*, 58 Ill.2d 20, 317 N.E.2d 39 (1974); *Guth v. Loft, supra*; 6 Z. Cavitch, *Business Organizations*, § 127.04[2] (1981); Comment, "Corporate Opportunity," 74 *Harv.L.Rev.* 765 (1961). This duty applies to whatever could be of value to the enterprise to which the fiduciary owes a duty, and would clearly include the opportunity of retiring the debt of a corporation or its subsidiary at a discount, *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951), or of settling outstanding litigation on favorable terms. As this Court said in *Glen Allen Mining Co. v. Park Galena Mining Co.*, 77 Utah at 380, 296 P. at 238:

> But it was undoubtedly the right of the stockholders to expect of their officers that they would use the resources of the company and their influence for the preservation of the property and credit of the corporation. *They have just cause of complaint when instead of so doing the officers upon whom they had a right to rely . . . urged and contracted with creditors to force execution sales, and out of the ruins so created emerged claiming as their own the property they had sworn by their oaths to protect.* [Emphasis added.]

Instead of working to preserve their corporation's most valuable asset by exhausting every means to pay off the creditor's claim and to secure the subsidiary's imperiled control, these defendants made only one attempt to obtain the needed finances for the corporation, and then, without submitting the opportunity for the action of disinterested directors or stockholders, swiftly acquired the secured debt for themselves and surreptitiously perfected the security interest in the subsidiary's stock into absolute ownership in themselves. This was a clear appropriation of a corporate opportunity and a clear violation of defendants' fiduciary duty of loyalty. Cases granting a corporation equitable relief to redress similar violations by its officers or directors include (in addition to those cited earlier) *American Empire Life Insurance Co. v. McAdory*, Miss., 319 So.2d 237 (1975); *Patient Care Services, S.C. v. Segal*, 32 Ill. App.3d 1021, 337 N.E.2d 471 (1975); *Weissman v. A. Weissman, Inc.*, 374 Pa. 470, 97 A.2d 870 (1953).

█ Invoking an exception to the corporate opportunity doctrine, defendants argue that they are immune from the application of the rule in this case because of the financial inability of the parent or subsidiary corporations to take advantage of the opportunity. Where the corporation is, in fact, insolvent in the sense that it is defunct as a practical matter, the doctrine of corporate opportunity does not apply and the corporate officials are free to act for their own benefit. *Electronic Development Co. v. Robson*, 148 Neb. 526, 28 N.W.2d 130 (1947); *Hart v. Bell*, 222 Minn. 69, 23 N.W.2d 375 (1946); *Jasper v. Appalachian Gas Co.*, 152 Ky. 68, 153 S.W. 50 (1913); Walker, "Legal Handles Used to Open or Close the Corporate Opportunity Door," 56 *Nw.U.L.Rev.* 608, 624–25 (1961). But in most jurisdictions, corporate financial difficulty short of actual insolvency as defined above is inadequate by itself to exonerate a fiduciary who appropriates an opportunity. *Irving Trust Co. v. Deutsch*, 73 F.2d 121 (2d Cir. 1934); *Toledo Trust Co. v. Nye*, 392 F.Supp. 484, 487 (N.D.Ohio 1975); *Paulman v. Kritzer*, 74 Ill.App.2d 284, 292–93, 219 N.E.2d 541, 545 (1966); *Durfee v. Durfee & Canning, Inc., supra; Electronic Development Co. v. Robson, supra*; 3 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 862.1 (rev. perm. ed. 1975). Thus, mere "technical insolvency such as [the corporation's] inability to pay current bills

**2.** To avoid the distortion of self-interest, a director who desires to acquire a corporate opportunity for his own benefit should make full disclosure and submit any questions of fact, such as the corporation's interest or financial or legal ability, to the impartial judgment of others. *Kerrigan v. Unity Savings Ass'n*, 58 Ill.2d 20, 28–29, 317 N.E.2d 39, 43–44 (1974); 6 Z. Cavitch, Business Organizations § 127.04[2] and [2][b].

when due or ... mere inability to secure credit" will not absolve a director. *Electronic Development Co. v. Robson*, 148 Neb. at 539; 28 N.W.2d at 138. The reason for that rule was aptly stated in *Irving Trust Co. v. Deutsch*, 73 F.2d at 124:

> If directors are permitted to justify their conduct on such a theory [corporate financial inability], there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the obligations, an opportunity of profit will be open to them personally.

In this case, the proof showed only that during the critical period in which the parent company was negotiating with the creditor, the subsidiary's earnings were negligible; that it had given security interests in all its accounts receivable, machinery, and equipment; and that the one bank which defendants approached refused to extend additional credit to either corporation except on the strength of personal guarantees. Nevertheless, the subsidiary was an ongoing concern with a net stockholder's equity of from $200,000 to $305,000, and was not actually insolvent or defunct for purposes relevant to this case. Compare *A.C Petters Co. v. St. Cloud Enterprises, Inc.*, 301 Minn. 261, 222 N.W.2d 83 (1974). The fact that the subsidiary paid $20,000 of the $70,000 settlement and that the subsidiary's earnings were eventually used to repay most of the $50,000 settlement loan provides another persuasive answer to defendants' contention that the corporations were financially unable to take advantage of the opportunity to settle with the creditor.

Defendants also attempt to justify their takeover of the subsidiary by stating that they were holding the subsidiary's stock to insure repayment of the personal loans they had made to the parent over a period of several years. They emphasize how they mortgaged their homes to obtain the financing to meet the creditor's settlement offer and save the subsidiary. The directors of a corporation are not obligated to pledge their personal assets for a corporation's benefit. *Urban J. Alexander Co. v. Trinkle*, 311 Ky. 635, 224 S.W.2d 923 (1949); *Hart v. Bell, supra*. If they choose to pledge personal assets on behalf of the corporation, however, they cannot use that fact to justify their actions in having the corporation refrain from exploiting a corporate opportunity so as to permit them to obtain security for obligations previously unsecured. *W.P. Noble Mercantile Co. v. Mt. Pleasant Equitable Co-operative Institution*, 12 Utah 213, 42 P. 869 (1894).

As a matter of law, the defendants breached their fiduciary duties to the parent and subsidiary corporations, and the parent corporation is entitled to the benefit of their acquisition of the subsidiary's stock. The judgment for defendants is therefore reversed, and the case is remanded to the district court for the entry of judgment for the plaintiffs, decreeing ownership of the subsidiary Sorority, Inc., stock in the parent, Sorority Industries, upon equitable terms to be fixed by an accounting among the parties, and for such further relief as may be appropriate. Costs to appellants.

HALL, C. J., and STEWART and HOWE, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.